## Case No. 15,855.

### UNITED STATES v. NARVAEZ.

[1 Cal. Law J. 341.]

District Court, N. D. California. July 25, 1862.

MEXICAN LAND GRANTS — LOCATION OF QUANTITY — EXTENSION BEYOND BOUNDARIES OF GRANT — OBJECTIONS TO SURVEY — ESTOPPEL.

[A grantee reserved to himself a given quantity of the lands granted, and sold the excess. The purchasers of the excess themselves laid off the quantity reserved, and in so doing extended the line beyond the limits of the grant to include a strip of which the grantee had long maintained possession. *Held*, that the ancient possession and cultivation of this strip, the general recognition of the boundary by the grantee's neighbors, and impliedly by the former government in granting the adjoining ranch according to such boundary, the act of the purchasers of the excess in making the location, together with the fact that the United States did not complain thereof, was sufficient to, warrant the court in confirming a survey which adopted the boundary in question.]

[This was a claim by José Augustin Narvaez for San Juan Bautista, two square leagues, in Monterey county, granted March 30, 1844, by Manuel Micheltorena to J. A. Narvaez. Claim filed February 27, 1852; rejected by the commission November 15, 1853; confirmed by the district court July 15, 1855. Case unreported. It is now heard upon objections to the survey. Vanderslice & Clarkson and Branham & Lewis, intervenors.]

HOFFMAN, District Judge. By the final decree in this case there were confirmed to the claimant two square leagues of land to be located within the boundaries described in the grant. The petition of Narvaez to the board, after setting forth the grant, etc., represents that within its exterior boundaries are contained about three leagues and one-tenth. That he has caused two leagues to be accurately surveyed, and that the same are indicated by red lines on the map of the survey of the whole rancho, which he submits to the board. He therefore prays that his title may be decreed to be valid for all the land embraced within the exterior boundaries. But if the board should be of opinion that he is only entitled to two leagues, then that the said two leagues may be confirmed to him, and surveyed so as to embrace the land inclosed with red lines on the map. In the same case a supplemental petition was filed by Vanderslice & Clarkson. This petition, after setting forth the grant, and the ancient occupation and settlement of Narvaez, alleges that on the 11th April, 1850, Narvaez conveyed to the petitioners the whole of the said rancho, excepting two leagues, which he reserved to himself, and which were to be measured off by the peti-

tioners; that this was done accordingly. The petitioners further represent that the original grant, the deed of Narvaez to themselves, and maps of the land claimed by them, with a duly authenticated plat of survey, are already on file in the case. They therefore pray that their title may be decreed to be valid to the whole of the land, excepting the two leagues set apart and measured off to Augustin Narvaez.

The deed from Narvaez to Vanderslice & Clarkson confirms the statements of their petition, and it expressly mentions that the land intended to be conveyed is the sobrante or excess above two leagues, which may be found within the exterior boundaries of the rancho.

It is evident that the claim of Narvaez was restricted to the two leagues which had been, in accordance with his agreement with Vanderslice & Clarkson, measured off to him, and which, on the map referred to, in both petitions, was indicated by red lines; while the claim of Vanderslice & Clarkson was for the sobrante, which on the same map is inclosed in green lines. By the final decree of this court the claim was confirmed to the extent of two leagues only. The application for a confirmation of the sobrante was therefore in effect rejected. There has accordingly been surveyed to Narvaez the two leagues reserved by himself, and in accordance with the plat of survey presented by him and by Vanderslice & Clarkson to the board. To this survey the United States make no objection. Objections, however, are filed by certain intervenors claiming under Vanderslice & Clarkson, and under another conveyance from Narvaez, which will hereafter be noticed.

It is urged that the two leagues are located to the north and west beyond the exterior limits of the diseño; that the boundary line on the northwest, thereon delineated, is not the Los Gatos creek, but an imaginary line to the southeast of it, and that the line of the survey should be drawn, as indicated by the diseño, so as to cross the Alisal at a point to the south of its present location. By thus cutting off a considerable tract to the northwest, the quantity of two leagues can only be obtained by a corresponding extension to the southeast, and thus a portion of the sobrante conveyed to Vanderslice & Clarkson will be included, which they, or their representatives, claim to hold by virtue of Narvaez deed. The inequitableness of this pretension is apparent. It is plain that Narvaez intended to sell, and Vanderslice & Clarkson supposed they were buying, only the excess over and above two leagues, which might be found within the exterior limits. The petition of Narvaez indicates, by the alternative form in which his prayer for confirmation is expressed, that he had little expectation that his title would be deemed valid for more than two leagues, and we may presume that the consideration

paid for the assignment of his possible title to the sobrante was much less than the value of the land, if his title to it had been clear. If, in measuring off the two leagues and separating the sobrante, a mistake has been committed, it was the mistake of Vanderslice & Clarkson, by whom the measurement was made. Their claim to the tract, inclosed in green lines, proceeded on the hypothesis, and indeed the express allegation, that there had already been measured off within the exterior limits to Narvaez the two leagues reserved by him; and his claim to the tract within the red lines was, in like manner, founded on the idea that that tract was wholly within the exterior boundaries, and would constitute the two leagues which he reserved. When, therefore, the claim of Vanderslice & Clarkson for the sobrante was rejected, they lost all to which they could assert any title. And the speculation on which they bought the sobrante failed, it being decided that there was no sobrante which could have been conveyed to them.

The attempt now made by them, or their representatives, to change the location made by themselves of the two leagues reserved by Narvaez, and by making it include a part of what they acquired as a sobrante, claimed as a sobrante, and measured off under their deed, because it was a sobrante, seems to me palpably unjust. If successful, the effect would be to deprive Narvaez of a portion of the two leagues which it was well understood by all parties he was to retain, and, profiting by their own mistake in measuring the land, to permit them to acquire under a deed for the sobrante, or excess beyond two leagues, a portion of the two leagues which their grantor expressly reserved to himself. It seems to me that by their own measurement, plat, and survey, filed with the board, by the terms of their deed and their petition, they and their representatives are estopped to contend that the two leagues measured off to Narvaez were not correctly located, or that the land, or any part of it, deeded to them beyond the red lines, was a part of the two leagues reserved by Narvaez, or other than the sobrante or excess over and above those two leagues.

But the intervenors also claim the right to object to this survey by virtue of a conveyance from Narvaez to Isaac Branham and Jackson Lewis, of a certain portion of the rancho not included in the survey. In this conveyance the part of the description material to notice is as follows: "Thence southeasterly along said line to the southeast corner of the land of said Bassham; thence southwesterly along said Bassham's line, and in continuation thereof, until the same strikes or arrives at the original boundary line of the said Rancho San Juan Bantista or Narvaez Rancho; thence along and with the line of said original boundary of said Narvaez Rancho, in a southeasterly direction, to the

Arroyo de los Capitancillos; thence down and along with said Arroyo," etc.

It is contended on the part of the claimants that the "original boundary line of the Narvaez Rancho, "referred to in this description, is the boundary of the rancho proper, as the same was established by the survey of Vanderslice & Clarkson; and that, therefore, the deed embraces no part of the sobrante, and all the land conveyed to Branham and Lewis is within the official survey. Hence they have no right or interest to object. On the other hand, it is urged that the reference to the original boundary line of the rancho is too explicit to be mistaken. That the land of Bassham extended to the boundary which divided the two leagues of Narvaez from the sobrante, and inasmuch as the deed describes the northerly line of the premises conveyed by it as running "along Bassham's line, and in continuation thereof, in the same direction," it must have been intended to run beyond the dividing line between the two leagues and the sobrante at which Bassham's line stopped. To this it is replied that the westerly line is described as "running with said original boundary line in a southeasterly direction to the Arroyo de los Capitancillos;" and that the exterior boundary line cannot be meant, for that line runs in a direction nearly due south, and terminates at the Sierra Azul, and not at the Arroyo de los Capitancillos. It is also urged that, even if a portion of the sobrante conveyed to Clarkson & Vanderslice be included within the boundaries mentioned in the deed, that instrument, by an express exception, excludes from its operation "all lands or portions of the same included in the description, which may have heretofore been legally and properly sold by the said parties of the first part, and in accordance with law."

It is certainly not easy, if the line referred to in this description be the boundary of the two leagues measured to Narvaez, to account for that part of the description which calls for a boundary along said Bassham's line, and in continuation thereof, until it strikes or arrives at the original boundary line of the Narvaez. On the other hand, if the exterior boundary be meant, that boundary corresponds, neither in its course or points of termination, with the description of it in the deed; for it is described as running in a southeasterly direction, and terminating at the Capitancillos creek, whereas the exterior boundary of the rancho, or the line of Hernandez, runs in a nearly southerly direction, and terminates at the sierra.

Mr. Bassham. by whom, as agent for Narvaez, the negotiations were made and the sale effected, swears that it was well known to all parties that the land beyond the boundary of the two leagues had already been sold to Vanderslice & Clarkson, and that the reservation in the deed was understood to apply to that land. if any of it were embraced within the general description. The tract officially surveyed to the claimant is precisely that measured off for him by Vanderslice & Clarkson, and for which his claim was presented to the board. The grant describes the disputed boundary "as the place or rancho of Hernandez, and the Pueblo of San José, without passing the Alizal which pertains to the latter." The line of Hernandez is not disputed. It forms the western boundary of the rancho. The only designation of the northern boundary, which is the boundary in controversy, is the call for the "Pueblo without passing the Alizal." But the Pueblo and Alizal can only serve as a limit on the easterly end of the northern boundary. For the location of the remainder of that line we must have recourse to the diseño. On this diseño we find a dotted line, which, on its upper or western portion, was evidently intended to indicate the boundary of Hernandez; but the lower or northwestern and northern portions seem equally clear to have been drawn to mark the limits of the rancho in those directions. This line is at a considerable distance to the south of the Gatos creek, and if this indication be scrupulously observed, that creek cannot be reached. It has, notwithstanding, been taken as a boundary in the official survey; and the line, when produced across the Monte, includes a larger portion of the Alizal, and strikes the Guadalupe creek at a greater distance from the San Juan Bantista hills, than would seem to be warranted either by the delineation on the diseño, or the calls of the grant. This strip of land lying along the "Gatos" appears to have been from an early period occupied, and a portion of it cultivated, by the grantee. At a place within it, called the "Abra," he established one of his sons; and the "Gatos" seems to have been generally recognized as his boundary by his neighbors. At the time he obtained his title, the grant to Hernandez had already been made. This latter rancho lay at the base of the sierra, and extended on both sides of the Gatos, a considerable distance down that stream. The diagonal dotted line, on the westerly corner of the diseño, was intended to mark the boundary of Hernandez. But Hernandez' land does not extend along the creek the whole distance from the sierra to its mouth, and there would seem to have been no motive for assigning to Narvaez an imaginary and arbitrary line for a boundary, instead of allowing [him] to come to the creek below the line of Hernandez, and where he would interfere with no one. The only boundary on this side, mentioned in the grant, is the pueblo of San José; and it appears that out of the lands of that pueblo a grant of a place called "Los Coches" was subsequently made, the diseño of which shows that it lay below the rancho of Hernandez, and on the lower portion of the Gatos. But that creek forms its southern boundary, and is inserted "Arroyo de la Mojonera," a circumstance which may justify the inference that the government, when granting Los

Coches up to the Gatos, and no further, supposed that the rancho of Narvaez, on the opposite side of the creek, also extended to it. Such seems to have been the understanding, not only of Narvaez himself but of the vecinos and colindantes; and, as before remarked, the principal part of his cultivation was on lands between the dotted line and the creek.

As early as 1850, the survey of Day was made, which was intended to segregate the two leagues reserved by Narvaez from the sobrante conveyed by him to Vanderslice & Clarkson. The location appears to have been acquiesced in by all parties. No objection to it is made by the United States, or by any colindante. The only exception to it is taken by parties who acquired their interests with full notice and understanding that any lands outside of this location were conveyed as part of the sobrante, and that no title passed unless it should be held that the grant to Narvaez was not restricted to the quantity of two leagues, but embraced all the land within the exterior boundaries.

For the reasons already given, it has appeared to me that the representatives of the grantees of the sobrante cannot now be heard to object to the location made by themselves, and on the faith of the correctness of which, the supposed sobrante was conveyed to them. The right of the representatives of Branham to object is more open to debate. But it has seemed to me that the deed to him, as limited by the reservation contained in it, cannot be construed to embrace any lands not included within the two leagues which had been measured off to Narvaez; and, even if any such lands were included, that it was understood that they were to be taken out of what was recognized on all hands as the sobrante.

I am aware that to confirm a location which extends beyond the exterior limits of the diseño or grant is an apparent departure from the principle by which the court is required to be governed. But in this class of cases no rule can be inflexibly observed, nor any principle be of universal application. The whole of the two leagues measured off to Narvaez has been sold, and the contest is, in effect, between those who have bought the land claimed to be without the external boundaries and those who have bought lands supposed to be part of the sobrante. The ancient possession and cultivation of Narvaez—the general recognition of his boundaries by his neighbors—and impliedly by the former government in their grant of the adjoining rancho of Los Coches—and the express and emphatic recognition and adoption of the same boundaries by the purchasers of the sobrante when laying off the two leagues reserved by Narvaez, with the fact that if these boundaries be now changed the practical effect will be to deprive the representatives of Narveaz of a part of the two leagues intended to be reserved, and to give to the intervenors, as a part of the rancho proper, lands that they bought as a sobrante,—these considerations, and the fact that the United States acquiesces in the location, and that no colindante objects, have led me to the conclusion that I ought not to disturb a location so long recognized, and which there can be no doubt would have been adopted and confirmed by the former government, or by the officer giving judicial possession, if called on to perform that duty. I think, therefore, that the survey should be approved.

Since the foregoing opinion was delivered, it has been suggested to the court that the official survey does not exactly conform to the division of the rancho made in pursuance of the deed to Vanderslice & Clarkson. Leave was therefore given to the counsel for the claimant, by whom the slight discrepancy had been overlooked, to file objections to the official survey nunc pro tunc; and, in accordance with the views expressed in the opinion, the survey must be modified so as in all respects to conform to the lines agreed upon as has been stated.

February 3d, 1863.—It having been found that the modification of the survey above indicated will embrace lands now occupied by certain parties claiming under the United States, and the intervenors Easeley et als., through their counsel, J. J. Williams, Esq., having signified to the court their willingness to waive any modification of the official [survey], and to accept the same as a correct and proper survey of said rancho, and the United States having opposed no objection to an approval of the same, it is now, on motion of Mr. Williams, ordered that he have leave to withdraw the exceptions of Mr. Easeley to said survey heretofore allowed to be filed nunc pro tunc—and that a decree be entered approving said official survey as returned into this court.